of America v. Scott Valenti. Good morning. My name is Molly Corbett. I represent the appellant Scott Valenti. The district court committed procedural and substantive error in resentencing Mr. Valenti, as well as in ordering a new order of restitution. In the criminal history category, the court added points which increase the criminal history from a criminal history category 3 to a criminal history category 4. In doing so, the court found that the state conviction of Mr. Valenti for failing to use a vehicle with an interlock device was similar to offenses that are listed in 4A1.2c. Mr. Valenti had argued at the resentencing that that scoring of that interlock, the use of the interlock device, and finding that that prior conviction was more egregious than the listed offenses was erroneous and should not be counted, because the interlock device, using the common sense approach analysis in the sentencing guideline application, was not qualified as similar to or more egregious than the listed offenses. Let me start out with one question that I found puzzling. Do you agree that we can consider the actual conduct of Mr. Valenti in connection with the interlock offense? The word categorically turns up in one of our cases, but it seems to me that every subsequent case quotes that and then says, oh, that doesn't mean the categorical approach, as we've come to learn about it in most criminal history settings, but it says you'd use this common sense totality of the circumstances approach applied to the conduct that the person engaged in, not to the label on the offense or the elements of the offense. Do you agree with that characterization of our case law? I agree that there is a case that talks about looking at the offense categorically. There are several of them. There are several, and they— And they don't just talk about it, they do it. Exactly. But in doing so, they're ignoring the entire common sense approach that's outlined within the guidelines, and specifically, conduct can be considered, but it's not the driving force of the application of the guideline. If you read the guideline and the amendment as it was introduced in 2007, in the background of it, it was to take a universal approach to a number of factors to be considered in the application. That may be so, but if one of those factors is the actual conduct, now what we're talking about is really a question of did the district court abuse its discretion or reach a clearly erroneous assessment of all of the circumstances that it took into account, right? The district court gave too much weight to the actual conduct of Mr. Valenti in that instance, as compared to the various other factors that should be taken into account? Our premise is that the court actually ignored the common sense approach that was outlined in 4A1.2C in the application note, and instead applied what had been previously used in courts prior to 2007, and in doing so, actually committed an error that was one of the reasons for the amendment of the guideline, and that was an error that was addressed in Hardeman, and in that approach was adopted later. De Jesus Concepcion in this court comes after 2007. Yes. And it applies, it says you can consider the underlying conduct. Yes, I agree that you consider the underlying conduct. So why isn't, I mean, when someone with a history of drunk driving uses a, and who as a consequence of a conviction is under a court order only to use the, a car that has an interlock device, right? And in defiance of that, he goes out on the road, and we're asking a question that's something like is this more serious than the listed offenses, one of which is contempt of court, one of which is careless driving. Then he gets pulled over because he is texting or something by the police officer. Then he gives a false name to the police officer to try to avoid being detected as the person who has this obligation not to be driving that kind of car. Why doesn't that combine offenses of careless driving, contempt of court, and obstructing an officer, each of which individually is on the list of things that don't count? But why isn't it more serious to do all three of those at once? Why isn't that a common sense, reasonable assessment by the district court that this should get a point? Well, unfortunately, we don't know which of, which of the offenses the court was actually comparing Mr. Valenti's conduct to. So that's lacking in the record. What difference does that make? I mean, he's comparing it to the list of offenses, there's a list. And he says, look, you look at the totality of the circumstances here, this offense is more serious than those things on the list. Why would we say that's a clearly erroneous determination? Well, if that were the case, then the prior conviction would, or the offense about which he is, that actually scores for the criminal history would become completely irrelevant. So it wouldn't be about what the criminal history, his actual prior criminal history and what he had been convicted of was, was, actually was. So it's a combination of all of those things. Why doesn't Application Note 12 deal with this in its last consideration, which is the degree to which the commission of the offense indicates a likelihood of recurring criminal conduct? Why wouldn't that take within all that Judge Lynch has just mentioned with his history, all the factors of his committing this offense, no license, white's car, he gives the false name to the officer at the beginning. Why isn't that, why isn't that encompassed in that, in that application note? I would agree that that would be encompassed within the application. But it also . . . Your argument. Well . . . That it was error to, to give, assign a point for this. Because in doing, just because the, in doing the analysis that the court was required to do, the application note one . . . Is the argument that we don't know that the district court made the findings that we're suggesting to you would be adequate to, to warrant the application of this point? Is that the argument, that, that it needs a remand so we can be sure that's what the district court was thinking? That is part of the argument. Is that . . . Could that be? I mean, why . . . We don't require district judges in applying the guidelines to go through any note formula. As, when it's, when it seems apparent, and you're even conceding, by reference to the application notes, that this enhancement is appropriate, why, why wouldn't we just defer? Even though the wrote statement isn't required about the actual application of the guidelines, there is, the record should reflect some thoughtful process in the application of the guideline that would allow for appeal. On appendix, on appendix 286, the judge says, the court finds that Mr. Valenti's culpability in that offense, including during the relevant incident, not only failing to use an interlock device as required, but driving recklessly by using a cellular telephone, repeatedly lying to the police about his identity, and driving without a valid license, and then goes on to say that indicates a high likelihood of recurring criminal conduct because he was on probation, had four prior convictions, et cetera, et cetera. Why isn't that exactly the thoughtful consideration that you just said the judge should have given, making all the findings of what, what the, Mr. Valenti did? Because there was no discussion about the other elements within the common sense approach that's outlined under the 404.1.2c application note. The elements of the offense, the level of culpability differing between the offenses, reckless, reckless driving requires a high level of mental state, the contempt of court, this was actually installed as a condition of probation, and it was a monitoring device, it wasn't that he had been, and the revocation of license, he still possessed the ability to drive. So the prior treatment of that offense is, and the elements of the offense and the level of culpability of the actual offense itself was less than. I just quickly- Can I just ask you about the second point for the sentence of imprisonment of 60 days that he was medically not able to serve? Does it make a difference how we rule on that? Because my understanding is if we disagree with you on the interlock device conviction and scoring of that, he still gets the criminal history category four. He doesn't need that extra point to get there. Does that make a difference? The only difference it would make in our argument about it not being harmless error is the fact that it may change the judge's discretion within that guideline range. So without that extra point, he may have been more susceptible to maybe sentencing lower within the range. But it doesn't change- Is there anything in the record that says that the district court might have felt that way? No, but I think also when coupled with our argument about substantive unreasonableness of the sentence and if this were to be sent back based on that. And I would just quickly like to address that point. This was a limited remand and in attempting to inform the court about the 3553A factors that the court could consider and should consider in resentencing Mr. Valenti, counsel brought up a very recent and well-publicized case of fraud from a long-standing investment house in Albany, New York. And instead of being receptive to that comparison, the judge just basically wrote it off to it being a different sentence imposed by a different judge. He said, I don't know what happened with the sentencing of those two individuals. I don't know enough about it to really make a comparison. But he also considered the sentencing memo that was given earlier, which had a lot of different sentences described. So how is that- And that was, and it had been raised by counsel prior. And in talking about that, counsel had advised the court that the sentences of those two individuals, both of whom had participated in a fraud scheme with losses over 300 million involving over 800 victims, and had also subsequently resulted in 11 additional investment brokers being brought up on criminal charges. Why do we think that was a reasonable sentence? Why did the court advise? Why do we think that the Smith and, I forget the other fellow's name, sentences are reasonable sentences? It's not that they're necessary. Well, they were affirmed as being reasonable sentences. Did the government appeal those sentences? Those sentences were appealed by Mr. Smith-Amigand. Yeah, they thought they were too low. And the court said they're fine. But what about, but the government didn't challenge the length of the sentence. The court never said these sentences are not unreasonably low. No, the court did not. But the argument was- What I'm concerned about, in other words, and I really want you to address this in a substantive way, is isn't this kind of argument about disparity problematic to the extent that it creates effectively a one-way downward ratchet on sentences? That as soon as a judge gives a lenient sentence in what may seem like an egregious case, then anyone who has a less egregious case gets to say, my sentence has to be lower than those people because they're worse than I am. But without, but that's all based on the fact that essentially the government almost never appeals sentences as unreasonably low. I would say that instead of it being a downward ratchet, that it's more of a reflection of what appropriate sentences may be in those cases, dependent upon the facts of each of those cases. How do we know that? Because we never reviewed that sentence from the standpoint of, is it unreasonably low? We only said it was not unreasonably high. And aren't we now in exactly the same position that Judge Sharpe was in of this panel? Doesn't have before it all of those details. Are you suggesting that we need to go back and analyze the sentences in that case, and decide how we think those people should have been sentenced, and then compare that to how Mr. Valenti should be sentenced? No, for substantive reasonableness, I think you look at what the offense conduct and the offender are in front of you, and the presentation of the materials under 3553A entail. And one of those considerations also being whether this is contributing to a disparity in sentencing. And if the bulk of sentences that are being imposed by different court judges is that they are becoming lower beneath guideline ranges. We have a bulk. Or if there are an amount of sentences that, as counsel had indicated, were below guideline sentences for various reasons, that that is one of those considerations. Did those individuals, for example, in the other, I keep forgetting the name, but it's been cited to me so many times in different contexts by now, this big brokerage house firm. Did those people have a history of prior civil regulatory penalties? They did not have a, not that I'm aware of, but one- Did they have a history of criminal convictions that puts them, perhaps excessively, in criminal history category four? They were in a criminal history category one. But as part of my- Excuse me, because they were first offenders criminally. They were first offenders, yeah. And they were also apparently, as far, I'm asking you, I don't know. But it's not that common that we see this. As far as we know, they were first offenders in the securities industry. While your client has a history of civil regulatory violations. One of the reasons he was doing this scheme the way he was doing it is that he was already banned from being associated with any broker dealer, right? He did have a history of that. Yeah, so why doesn't that, why isn't that relevant, rather than just saying the number of victims, the amount of money was bigger in the other case? Well, those are relevant considerations, and should have been relevant to Judge Sharp in making that determination. So, not only was the disparity not considered, but the argument also was that the history of his criminality and almost the over-representation of his criminality had been driven by his alcoholism. So that if you had looked at that criminality as a result of his substance addiction- You state that as if it's a matter of fact. He conducted this crime over an extended period of time. I don't think that the, he was drunk, is going to take you very far on that with most judges. Now, we are not imposing the sentence, but to the extent you use that as if that's a conclusive mitigating factor, that might not persuade many district judges. It may not, it may not, but it is one of the factors that Judge Sharp- Well, but now you're arguing to us that this was a substantively unreasonable sentence, and you have to persuade us, not simply that another judge might have imposed a different sentence, but that the sentence imposed was not one that as a matter of law was available to the judge, because it was just so far outside the wide range of sentences available as substantively reasonable. I don't think you've- Well, the substantive reasonableness assessment doesn't necessarily entail that it had to be so outside of the range. In Dorvian and Jenkins, when this court has reviewed child pornography sentencings, you've looked at sentences that have been sentenced at the top of the range or have involved some other- I'm not talking about the guideline range. I'm talking about what we've talked about in cases like Jones and Caveira, that substantively, there's a broad range of sentences available to a district judge. There's not just one substantively reasonable sentence. Now, in the cases you cited, we have found that range to be even narrower than the guidelines, but I'm not sure you can make that argument with respect to your client's crime. Well, if Judge Sharp were to have considered the disparity with the fact that he was sentencing at the statutory maximum, and in comparison to those other cases- But as Judge Lynch has pointed out to you, your client is not identically situated in all respects to those other persons, even on what we know. Well, in the substantive argument, it's not a generally- I don't want to say apples to apples argument, but it's not a red delicious to a Granny Smith. It's that he had a significant criminal conduct. That criminal conduct was driven by addiction. Smith and McGinn had significant- That's your argument. The district judge was not obliged to give him consideration for that fact when this was a crime perpetrated over an extended period of time. But he was obliged to look at the parsimony clause and to determine that this sentence was the best sentence available, in terms of what the sentencing factors were, so I would request that this be remanded for resentencing. Thank you, Mr. Kleimer. May it please the court, Stephen Kleimer for the United States. I hate to begin my oral argument this way, but I have to tell the court that there's a mistake in our brief, and it goes to a question that Judge Droney asked Ms. Corbett. We make two harmless error arguments, one with respect to the increase in interlock device, we make a separate harmless error argument on pages 47 and 48 with respect to the second point for whether the sentence was served or not. The second harmless error argument is wrong. I can explain it to you here today, and I will, it's a little complicated, and if I'm not comprehensible, I'll send the court a letter explaining why, but the second harmless error argument's wrong because of some features of the guidelines. And if I can, I'll explain that. There were five convictions that resulted in sentences that added points to Mr. Valente's criminal history score. First, he had a driving while ability impaired, one point. A second driving while ability to impaired, second point. A driving while intoxicated, a third point. And if you rule in our favor, and as Judge Sharp ruled, a fourth point for the interlock device offense. Those all applied under section 4A1.1C. That section has a four point cap. So if you rule in our favor on the interlock device, we are at the cap. And if you were to rule against us, I'm not suggesting you do, but if on the substance you were to rule against us on the other guidelines argument Mr. Valente makes regarding the second point, it's an all or nothing proposition. We lose both points because we can't revert to one point for the recidivist DWAI. We'd get no points because we'd already be at the four point cap. Now, if you rule against us on the interlock device, then getting two points on that will still leave. Actually, if you rule against us on both, then we would still be in category six or category three because we'd lose two points rather than one point. So if we, maybe I'm confused, but if we agree with you on the interlock device. Yes. But don't agree with you on whether you actually serve the 60 days. Yes. What happens? Is he still a criminal? You'd have to take two points off the score. You'd take one off for not serving the sentence. That would drop that sentence down to 4A1.1C. But because he already has four points under 4A1.1C, you couldn't add a fifth point. And that's what I missed in my- You'd be in category three then. Exactly. So maybe you better tell us why he actually served that sentence then. That's where I was going to begin, Your Honor. The district court's determination was based on two factual findings that are clearly correct. The first factual finding is that the sentence imposed included a component of 60 days incarceration. And there's no doubt about that. The pre-sentence report says it. The judge got a judgment of conviction from the state court that says exactly the same thing. The second thing is that the reason that wasn't served was because it was delayed, not ever taken off, but delayed because of Mr. Valenti's medical condition. Ultimately, it was never served because he ended up going to federal prison, in this case, while he was still serving that earlier sentence. So he got the break of having to self-go off to federal prison. The three circuits have addressed analogous circumstances where a sentence is imposed, it's not stayed, it's not suspended, rather the defendant just doesn't serve it. The Eighth Circuit has addressed it, the Fifth Circuit and the Eleventh Circuit. All three have said, if it's not for a reason that the court decides it's part of its official decision, but for some other reason, you should consider it as the sentence was served. In one case, there was just negligence. They never picked, this was the leading case. I think the name was Taylor, but I don't remember right now, it's out of the Eighth Circuit, it's in our brief. He just was never picked up on a fairly significant case, never served the sentence. On another one of the cases, he was already serving a sentence in another case that was very lengthy. While he was in prison, he committed a drug crime. The new sentence was consecutive, so he never had served a day in this consecutive sentence, but yet it was counted. I realize the application note here says he has to actually serve. There's no question about what it says, there's no dispute. The question really for this court is whether you should read that in a way to lead to absurd results. And it's an absurd result, for example, in one of the Eighth Circuit cases where it's a consecutive sentence. He's going to serve it eventually, he just hasn't started serving yet. Do we give him a windfall and have him not get the criminal history point? Here, Mr. Valente is not entitled to a windfall because a facility gave him consideration because of his medical condition. And allowed him to delay service of his 60 day sentence. Is it clear on the record that that's the reason he didn't serve it? Yes it is, Your Honor. What happened was in the district court, the defense argued that the reason he didn't serve it was because he got a revocable disposition, which was effectively some sort of suspended sentence. And the probation office went back and checked and they contacted the facility and said, the facility said no, that is not the case. The reason he didn't serve it was it was delayed because of his medical condition. Where do we find that in the record? It's in the pre-sentence investigation. In the pre-sentence report? It's in there, I cite to it in the brief, I just don't remember the paragraph it's in. And the probation officer was actually very diligent here. The probation officer called the sentencing commission up and said, look, here's our situation. What should we do about this? And the sentencing commission said, count it as two points. And Judge Sharp relied on that when he imposed the second point. All right, now, if I'm right, the pre-sentence report came to us under separate cover. It's not part of the appendix? Okay, but you're saying that's where we would find that it was based on his health. And I believe it's in the addendum. If you need any more help, I'll get the page for you. It's on page 66 of the pre-sentence report in reference to paragraph 123. Page 66 of the pre-sentence report, paragraph, one more time. The paragraph that begins with it starts with the words paragraph 123. Okay, thank you. And so, I mean, it's a fairly clear cut question for the court. Do you want to apply the language of the application note in such a way to lead to what I would argue is a deserved result, or do you not want to do that? Well, maybe the question for me might be not so much was it based on his health as what was it? In other words, was this simply a delay, an adjournment of his surrender date, such that he has not yet served the 60 days, but everyone agrees, or at least the state seems to think that he owes them 60 days? That's exactly the way the pre-sentence report reads, Your Honor, that it was a delay based on his health. But I think the question we're asking is, is there any expectation he's ever serving this? Well, and I can't credibly answer that. I don't know how diligent the state will be in 20 years when Mr. Valenti gets out, Your Honor, so I can't answer that. Well, now let me ask you, you just said, should we construe the application note in a way that leads to an observed result? In the first instance, is that something that the district court should consider? It has the discretion to depart from the guidelines or to vary from them. Is this an argument that should have been made to the district court that the language says this clearly, that it has to be served? But we're asking you to exercise your discretion not to follow that. I mean, that's not what you're asking us to do. You're asking us to say that as a matter of law, we're not finding it applicable in this case. That's quite a different matter. I think it's safe to say, Your Honor, that the district court did consider the very issue we're talking about. Recall what happened was this case went up to this court once already, and it was remanded on this claim for the district court to make specific findings. The application note and these arguments were before the district court. I think it was well aware. The district court may not have explicitly addressed that application note, but I don't think there was any question about whether the district court was fully informed of this. I mean, what I'm saying is, and this may be asking for something persnickety, if that's the right word, the district court calculated his guidelines with the two points. Correct. It didn't say, you know, under the guidelines, he may not warrant these two points, but the facts are such that I think that it's still as egregious a criminal history, and I'm treating it as the equivalent thereof. We don't have that here, right? I agree that the court- So the argument for your adversary is there's a miscalculation of the guidelines. Yeah, and again, Your Honor- We did have that, page 285 of the- No. That he addressed whether this constitutes actually served, and he says there's been no modifications to this sentence since the original sentencing in this case. There's no evidence that the defendant has been relieved of his obligation to serve this sentence, and as such, he finds that he gets that extra point, right? So there was a factual, there was at least a determination by the court. It wasn't like you had said in your brief, and I had asked you about whether it doesn't matter because he's still in criminal history four. He said, I'm making a conclusion here, after what the circuit said I needed to do, that it applies. Even though he hasn't showed up yet, it's still hanging over his head. That's correct. And that's my concern about your asking us to say, well, even if that's wrong under the application note, you should find that following the application note is absurd. I mean, you just argued to us the district court departed from the application note. It didn't, right? It found it- I'm not going to say departed from the, I have to balk a little at departed from the application. I think the application note is clear that if it's a suspended or stayed sentence, you don't get the extra point. If the defendant escapes, you do. And it seems that the drafters of the, or the sentencing commission didn't contemplate that there may be other reasons why you don't serve it beyond those three positives. Yes, you're not suggesting that the district court somehow got it wrong under the guidelines correctly interpreted, but we should say the sentence is right anyway. You're saying the guidelines correctly interpreted allow for these two points. And your argument about absurdity is, in effect, a kind of Holy Trinity Church argument that while the literal language of the application note says he has to serve at least a day in order to implicate the guideline that says it counts for the length of the sentence that he was imposed, not the amount of time he served. But that he has to at least serve a day. That that sentence is followed up by something that then says suspended sentences are in one category. And I can understand that because many states have systems as the federal government did before 1987. Where a judge would say your sentence is five years in prison, but that's suspended and you go on probation. And that's the only way somebody gets put on probation. And the sentencing commission is clear that that counts as a sentence of probation, right? Not as a five year jail sentence. On the other hand, if somebody gets sentenced to five years and is due to report on a given date, and instead he flies to Brazil and never comes back, or doesn't come back until some later point when he's sentenced for this new crime. In that case, even though he never served a day, it does count. And what you're saying is, this is more like that, not in the culpability of the defendant. He didn't do something illegal to escape. But he escaped due to fortuitous circumstances from serving a sentence that he still owes and that is still a legal sentence. And we should therefore interpret the guideline as giving him the two points, notwithstanding the literal language of that application note's first sentence. As have three others, the only three circuits to address it already. Yes. I see my time is up. May I just ask you about the restitution resentencing issue? What's the authority for increasing the restitution on this remand? The Johnson case, your honor. I mean, in Johnson- That relies on that this kind of restitution is mandatory. And if it's mandatory, it's gotta be the right amount. Is that a fair- That's part of the analysis. Johnson says, even if it's a limited remand and there's a clear error, the district court can go outside the scope of the mandate and correct the clear error. And here, there's no dispute that there was a clear error. No one's doubting that the correct restitution amount is the one Judge Sharp imposed on resentencing. In Johnson, the court had just not imposed restitution at all the first time around. Here, the court did, but the dollar amount was wrong because an error the government made. It failed to back out the amounts that some of the few lucky investors made, because that amount is not available for restitution. And so the loss amount and the restitution amount were slightly different. And the practical consequence of this is that if Mr. Valente uses a dollar from his prison commissary account, assuming this is allowed to buy a lottery ticket, and he hits the lottery, we don't want him to escape that extra $400,000 in restitution. Because as far as I can see, that's about the only scenario under which Mr. Valente is going to pay more than a pittance towards the 8.2, let alone the 8.6. I'm not going to give you an argument on that. But essentially, you're saying as a legal matter, the judge should be allowed to correct an obvious error, or a stipulated error, or an agreed upon error in the context of a limited remand. Exactly. Unless the court wants to hear from me with respect to the substantive reasonableness argument, I'll ask the court to affirm it. Thank you for your attention. Thank you, Mr. Clarence. Ms. Carby, you have two minutes. I just would point out quickly in regards to the recidivist DWI, where the sentence had not yet been served in paragraph 124. In my papers, I cite USV Hall for the proposition in that that application note that requires actual imprisonment means what it says. And that I would argue that the three cases the government is relying on don't talk about, they add information and add a requirement to that application note. An affirmative act by a court to intercede being required before an actual prison term, I'm sorry, term of imprisonment will be counted. That's not within that application note. There is another application note that talks about suspended sentences and stays. That application note itself also does not include an active participation of a court in suspending or staying the sentence. In this case, what we're arguing is that his health condition acted as a de facto stay or suspension of that sentence, and it was treated that way, and is reflected in the language of the PSR. The PSR that says that he was not mandated to serve that sentence. So as far as there being no active intercession as far as a state court issuing a stay or suspension, our position is that that was unnecessary. This was a de facto stay or suspension of sentence. He did not serve actual imprisonment, so those two points should not be counted. If the judge had stayed, had officially said, due to your medical condition, I'm going to stay until further notice, you're having to go to prison. In that circumstance, the application note would apply literally, and it would not count. It would not count, exactly. And your point is, does it matter that the stay was effectively issued by the Bureau of Prisons or the Department of Corrections rather than- Exactly, or that he had not been ordered to start to serve that sentence. In the Thompson case, which is cited by the government, it talks about suspended as to imposition or suspended as to execution. And this was suspended as to execution because of his health issues. As far as the restitution issue is concerned, if this court does find that there was clear error and there were cogent and compelling reasons for disregarding the law of the case in this case, we have no objection to the restitution order being reimposed. Thank you, Ms. Corbett. We'll reserve decision.